The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.





Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| DOUGLAS EUGENE GEHRING AND BETH ANN GEHRING, | CASE NO. 11-60611 |
| | JUDGE RUSS KENDIG |
| Debtors. | **MEMORANDUM OF OPINION** |

Debtors request authority to redeem a 2007 Chevrolet Malibu under 11 U.S.C. § 722. The Huntington National Bank ("Huntington") opposes the redemption. The court held a hearing on June 20, 2011. Nicole L. Rohr represented Debtors and Beth Ann Schenz represented Huntington. Following submission of Huntington's appraisal, the parties agreed to allow the court to decide the matter on the papers.

The court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(O). The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

As stated above, the court is deciding this on the competing appraisals submitted by the parties per the parties' consent. While contested valuations sometimes result in full evidentiary hearings, economic considerations may warrant less, rather than more, litigation. The manner in which a court decides a matter on the papers may not follow the exact route an evidentiary hearing would travel. Either party may request an evidentiary hearing and it is held without question.

The contention between the parties is the value of the car, a 2007 Chevrolet Malibu. When Debtors filed the motion, they provided a condition report from 722 Redemption Funding, Inc. ("722 Redemption"), the proposed financier of the redemption, indicating the value was $5,858.00. This was based on the February 2011 edition of Edmunds Dealer Retail for the Ohio Region. This valuation does not indicate which trim level is applicable,

LS, LS Fleet, LT, SS, or LTZ. According to Edmunds, the applicable trim creates variations in excess of $3,500.00 for the starting point.

This standard form is used repeatedly by 722 Redemption. It is particularly unhelpful. It does not indicate the trim, which is the key starting point. Then, it includes a host of check boxes for features. This is worse than unhelpful in many cases. Some, many, or all of the features may be standard on a particular trim. This sets the court off on a goose chase to determine which of these features are standard on the particular trim (which is not provided) to determine if the feature adds to the value of the vehicle or if it is misleading as already included in the value for the trim.

The form follows with a detailed condition analysis. Sadly, this analysis is followed by language that the person signing the form may have seen the car or may not have seen the car and, if not, took the word of an unspecified person as to the condition. The form then leaves no place to indicate whether the car was physically seen or not and, if not, who actually provided the information.

To be perfectly blunt, both the form and its routine execution are awful.

On the day of the hearing, Debtors filed an additional appraisal from Skipco Auto Auction supporting their valuation. According to that appraisal, the car is a four door LE model with a four cylinder engine and 91,219 miles. Unfortunately, there is no such thing as an LE trim for a 2007 Malibu. Skipco provides a base value of $6,500.00 for the vehicle, then deducts $775.00 in repair costs, to arrive at an actual value of $5,725.00.

Huntington provided a report from The Doan Group valuing the car, based on fair market value, at $9,240.00. The Doan Group arrived at this figure after deducting $1,125.00 for repairs. This report was thorough in relating a personal inspection and observation. Alas, the report does not indicate the trim of the vehicle or any options for a vehicle of this trim.

Both Skipco and The Doan Group agree that adjustments are necessary for repairs and note similar items: a large crack in the windshield, tires that need replaced, and a worn/stained interior. The real difference in the parties' valuations lies in the starting value of the vehicle. Huntington has a starting value of more than $10,000.00 while Debtors' starting value is $6,500.00.

Section 722 permits a debtor to redeem personal property by paying the allowed secured claim. The amount is determined under 11 U.S.C. § 506(a)(1), which states that the claim is secured "to the extent of the value . . . in such property." Section 506(a)(2) provides more concrete valuation guidance, directing court's to use "replacement value . . . as of the date of filing . . . without deduction for costs of sale or marketing." If the property is purchased for personal, family or household uses, as redeemable property is under section 722, replacement value is further defined as "the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined." 11 U.S.C. § 506(a)(2).

With this in mind, the proper redemption value in this case will be the value that most closely approximates the selling price a retailer dealer would charge for a similar vehicle. Many courts view the retail price of a like vehicle to be the starting point:

> Although its is now almost five years since the effective
> date of BAPCPA, no consensus has emerged in the case
> law interpreting § 506(a)(2) as to how replacement value
> for motor vehicles should be determined. The results
> reached ultimately seem to depend, not entirely surpri-
> singly, on the overall record a court is presented with in a
> particular case. *See* In re Morales, 387 B.R. 36 (Bankr. C.D.

Cal. 2008) (replacement value should be calculated as of the petition date by adjusting Kelley Blue Book or N.A.D.A. Guide retail values for a like vehicle); In re Eddins, 355 B.R. 849 (Bankr. W.D. Okla.2006) (Chapter 13 cramdown of non–910 vehicle; N.A.D.A. Guide retail value is starting point); In re Brown, C/A No. 06–00197–JW, 2006 Bankr. LEXIS 713, 2006 WL 3692609 (Bankr. D.S.C., April 24, 2006) (court rejects debtor's market reports evidence in favor of creditor's appraiser's report); In re Feagans, No. 06–20049, 2006 WL 6654576, 2006 Bankr. LEXIS 2872 (Bankr. D.Kan., October 18, 2006) (court rejects creditor's N.A.D.A. Guide valuation in favor of creditor's proffered opinion testimony from car salesperson as to what she would sell vehicle for on lot); In re Mayland, Bankr. No. 06–10283, 2006 Bankr. LEXIS 967 at *5, 2006 WL 1476927 at *2 (Bankr. M.D.N.C., May 26, 2006) (starting point for determining replacement value under § 506(a)(2) is 90% of the retail value of the vehicle listed by the N.A.D.A. Guide, explaining that adjustments still need to be made to the prices printed in the N.A.D.A. Guide, such as for reconditioning costs incurred to put a vehicle into saleable condition).

In re Pearsall, 441 B.R. 267, 270-71 (Bankr. N.D. Ohio 2010) (concluding that the "most probative evidence of the value of the vehicle for redemption purposes . . . is the actual circumstances of its acquisition" which occurred less than one month before filing). The court agrees that the retail price is a starting point and follows the line of courts which conclude that certain expenses, including reconditioning, must be factored into the calculations. Debtors' car is not "showroom" ready. Certain expenditures are required to bring the car up to retail price. As a result, the prices used by retailers, which reflect these additional charges, are inflated and do not represent the replacement value of this car.

The identified concerns with Debtors' appraisals renders them less persuasive. The 722 Redemption appraisal does not identify the trim level, while the Skipco appraisal misidentifies the trim. Since trim is a key indicator of value, these deficiencies are material. Huntington's appraisal is based on personal inspection. One of the pictures attached to the appraisal clearly shows that the car is an LS model and the court is convinced that The Doan Group valuation is likely to be the most accurate. Neither party has argued, and the court does not consider, the timing of the date of valuation. This could be significant given the recent, unusual rising market in used cars.

Further, upon review of both NADA and Edmunds, the court finds Huntington's valuation more closely reflects the price a retailer would charge. NADA lists a clean retail base price of $11,800.00 before factoring in mileage or condition. Edmunds.com shows a dealer retail base price of $10,020 before condition or mileage adjustments. Consequently, Huntington's starting point of $10,365.00 is well within these parameters. Debtors have not provided any support for their lower starting value or the substantial differences in the valuations presented. Consequently, the court will accept Huntington's value of $9,240.00 as the appropriate redemption value for the 2007 Chevy Malibu.

The court sincerely seeks to provide litigants guidance other than "stay off my lawn!" The most helpful and necessary information is: (1) year, (2) model, (3) trim, (4) options, (5) mileage, (6) condition, and (7) the basis, e.g. inspection or third party report, upon which the person makes the evaluation. This may be supplemented with arguments and evidence concerning variations or adjustments from retail price relating for conditioning expenses and the like.

An order shall be issued forthwith.

# # #

**Service List**:

Nicole Rohr
Beth Ann Schenz